UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JEREMY C. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  2:22-cv-1616-ACA |
| ) | |
| J. NORSWORTHY *Cpl. 3806*, ) | |
| *individually*, and CITY OF ) | |
| BIRMINGHAM, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

One night, Plaintiff Jeremy C. Williams went to a bar in Birmingham and had one and a half beers. He then walked to another bar, Innisfree Irish Pub, to meet up with some friends. Defendant Jared Norsworthy,[1] a police officer with Defendant City of Birmingham, was working security at Innisfree. What happened next is disputed, but it ended with Mr. Williams's arrest.

Mr. Williams filed suit, asserting a claim of false arrest against Corporal Norsworthy ("Count One") and a claim of municipal liability against the City ("Count Two"). (Doc. 1-1 at 6–8). Defendants moved for summary judgment (doc. 24) and then filed a corrected motion (doc. 25). The corrected motion supersedes the

---

[1] The complaint identifies Corporal Norsworthy as "Cpl. J. Norsworthy – 3806." (*See* doc. 1-1 at 4 ¶ 3). The parties appear in agreement that Jared Norsworthy is the correct name for this defendant. (*See, e.g.*, doc. 25 at 1). The court therefore **DIRECTS** the Clerk of Court to update the docket to reflect that Jared Norsworthy is a defendant in this action.

first motion, so the court **FINDS** the first motion **MOOT**. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 641 (11th Cir. 2019).

The court **WILL GRANT IN PART** and **DENY IN PART** Defendants' corrected motion for summary judgment. (Doc. 25). Because Mr. Williams's brief entirely fails to contest the City's entitlement to summary judgment on Count Two, **WILL GRANT** the motion and **WILL ENTER SUMMARY JUDGMENT** in the City's favor as to that claim without further discussion. (*See* doc. 27). This ruling will terminate the City as a party to the case.[2] However, the court **WILL DENY** the motion for summary judgment as to Count One because, taking the facts in the light most favorable to Mr. Williams, Corporal Norsworthy lacked even arguable probable cause to arrest him.

I.   BACKGROUND

When approaching a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact,

---

[2] The City construes the complaint to assert a claim of excessive force against it. (Doc. 25 at 15–16). The court does not construe the complaint to raise any claim of excessive force, nor does Mr. Williams contend that the complaint asserts any such claim. (*See* doc. 1-1 at 7–8; doc. 27).

2

the court's description of the facts adopts the version most favorable to Mr. Williams. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

Around 10:30 p.m. one evening, Mr. Williams met up with a few of his friends at a bar. (Doc. 21-5 at 15–16). Mr. Williams drank one and a half beers before he decided to go to Innisfree, a different bar nearby. (*See id*. at 16). Mr. Williams arrived outside Innisfree sometime between 11:40 p.m. and 12:30 a.m. (*Id*. at 20). Innisfree has a patio with a fence and gate that separates the bar from the sidewalk. (*Id.* at 18–19; *see also* doc. 27-2). Security stands at the gate to check IDs. (Doc. 21-5 at 20). Mr. Williams joined the line to get inside the bar. (*Id*.). When he reached the gate, Corporal Norsworthy stopped him and told him "to stand towards the outside of the line." (*Id*. at 21). Mr. Williams complied with these instructions and stood on the sidewalk, outside the gate, and away from the line of people waiting to enter Innisfree. (*Id*.; *see also id*. at 24).

"A few minutes passed" and then Corporal Norsworthy ordered Mr. Williams to leave. (Doc. 21-5 at 21). Mr. Williams did not leave the area and instead asked Corporal Norsworthy "what was going on and what [he] had" done. (*Id*. at 21, 23). Corporal Norsworthy told him to leave a second time. (*Id*. at 24). When

Mr. Williams again asked what he had done wrong, Corporal Norsworthy said, "You must want to get arrested" and arrested Mr. Williams. (*Id.*). Corporal Norsworthy charged Mr. Williams with third degree criminal trespass in violation of Alabama Code § 13A-7-4. (Doc. 27-1). That charge was eventually dismissed. (Doc. 21-5 at 42; doc. 21-4 at 21).

## II.   DISCUSSION

Because Mr. Williams did not contest the grant of summary judgment as to Count Two, the only claim the court must discuss is Count One. (*See generally* doc. 27). In that count, Mr. Williams alleges that Corporal Norsworthy falsely arrested him, in violation of the Fourth Amendment. (Doc. 1-1 at 6 ¶ 27). Corporal Norsworthy moves for summary judgment on the ground that he is entitled to qualified immunity because he had probable cause or arguable probable cause to believe that Mr. Williams had committed criminal trespass, was publicly intoxicated, engaged in disorderly conduct, and refused to obey a lawful order. (Doc. 25 at 19–31).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Corporal Norsworthy has invoked the defense of qualified immunity, he must first "show that he was acting within his discretionary authority during the alleged wrongdoing." *Helm v. Rainbow City*, 989

4

F.3d 1265, 1272 (11th Cir. 2021) (quotation marks omitted). Mr. Williams does not dispute that Corporal Norsworthy has carried this burden. (Doc. 28 at 18). So "the burden shifts to [Mr. Williams] to show (1) that the government official violated a constitutional right and, if so, (2) that the constitutional right was clearly established at the time of the wrongdoing." *Helm*, 989 F.3d at 1272.

"[A]n arrest without probable cause violates the Fourth Amendment." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992). "Probable cause exists when, after considering the totality of the circumstances, a reasonable officer could conclude that there was a substantial chance of criminal activity." *Land v. Sheriff of Jackson Cnty.*, 85 F.4th 1121, 1126–27 (11th Cir. 2023) (quotation marks omitted). Moreover, "officers conducting warrantless arrests do not violate the Fourth Amendment so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred." *Id*. (quotation marks omitted). To establish a constitutional violation, Mr. Williams must show that Corporal Norsworthy lacked probable cause for his arrest. But to show that the violation was clearly established, Mr. Williams must show that Corporal Norsworthy lacked even arguable probable cause. *Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995).

Arguable probable cause existed if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants *could* have

5

believed that probable cause existed." *Id.* Arguable probable cause does not exist if it is "clear that the conduct in question does not rise to the level of a crime, under the facts known [to the officer] at the time." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013). Because the analysis of probable cause and arguable probable cause are closely related, the court will address them together.

Here, Corporal Norsworthy contends that probable cause or arguable probable cause existed for criminal trespass, in violation of Alabama Code § 13A-7-4, disorderly conduct, in violation of Alabama Code § 13A-11-7, or public intoxication, in violation of Alabama Code § 13A-11-10, or failure to obey a lawful order, in violation of Birmingham City Code § 11-5-7. (Doc. 25 at 19–27, 30–31). The court will address each in turn.

Corporal Norsworthy contends that he had probable cause to believe Mr. Williams was trespassing because he was on Innisfree's property and refused to leave. (Doc. 25 at 23; doc. 21-4 at 16, 18, 23). Under Alabama law, a charge of criminal trespass requires that the trespasser "enter[] or remain[] unlawfully in or upon premises." Ala. Code § 13A-7-4; *see also id.* § 13A-7-1(3) (defining entering or remaining unlawfully as entering or remaining in defiance of "a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person"). But Mr. Williams testified that he "was on a public sidewalk" and never entered Innisfree's property before, or when, Corporal

Norswothy arrested him. (Doc. 21-5 at 31; *see also id.* at 19–20). Because this fact is in dispute (*see* doc. 21-4 at 8), this court must accept Mr. Williams's version of events. And in Mr. Williams's version of events, no reasonable officer could have believed that Mr. Williams had committed a trespass. *See Pickens*, 59 F.3d at 1206.

Corporal Norsworthy next argues that he had probable cause to believe Mr. Williams had engaged in disorderly conduct because Mr. Williams was "loud and boisterous," blocked the entrance/exit to Innisfree, and disobeyed his instructions to leave. (Doc. 25 at 23–24; *see* doc. 21-4 at 26). Under Alabama law, a person commits disorderly conduct if he (1) "[e]ngages in fighting or in violent tumultuous or threatening behavior"; (2) "[m]akes unreasonable noise"; (3) "[o]bstructs . . . pedestrian traffic"; or (4) "[c]ongregates with other person [sic] in a public place and refuses to comply with a lawful order of law enforcement to disperse." Ala. Code § 13A-11-7(a)(1)–(2), (5)–(6). But Mr. Williams testified that he was not noisy, loud, or heated when he spoke with Corporal Norswothy (doc. 21-5 at 40, 43); that he stepped "outside the line" and "waited" while other people in line entered Innisfree (*id.* at 21–22); and that he was alone when told to leave Innisfree's premises (*see id.* at 20–22, 43). Although Corporal Norsworthy recalls some of these events differently (*see, e.g.*, doc. 21-4 at 16, 26), this court must accept Mr. Williams's version of events at this stage. *See Washington*, 25 F.4th at 897. And

under Mr. Williams' version of events, no reasonable officer could have believed Mr. Williams was being disorderly.

Next, Corporal Norsworthy asserts he had probable cause to believe that Mr. Williams was intoxicated because he was unsteady on his feet, Corporal Norsworty smelled alcohol on Mr. Williams's breath, and he was loud and boisterous. (Doc. 25 at 24–25; *see also* doc. 25-4 at 9, 26; *see also* doc. 21-1 at 4). Under Alabama law, "[a] person commits the crime of public intoxication if he appears in a public place under the influence of alcohol . . . to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Ala. Code § 13A-11-10(a). Again, Mr. Williams denied that he was intoxicated, loud and boisterous, belligerent, stumbling, dizzy, or using slurred speech. (Doc. 21-5 at 40–41, 43). Accepting this version of events, as the court must, no reasonable officer could have believed that Mr. Williams was publicly intoxicated.

Finally, Officer Norsworthy asserts that he had probable cause to arrest Mr. Williams for refusing to comply with his repeated order to leave Innisfree's premises. (*See* doc. 25 at 26). Under the Birmingham City Code, "[i]t shall be unlawful for any person to refuse or fail to comply with any lawful order, signal or direction of a police officer." Birmingham, Ala., Code § 11-5-7 (1980). But Mr. Williams contends he was not on Innisfree property and instead on the public

sidewalk when Officer Norsworthy ordered him to leave (*see* doc. 21-5 at 19–20, 31), and Officer Norsworthy concedes that he would not have "any legal authority . . . to make someone leave the public sidewalk" (doc. 21-4 at 15). Because there are factual disputes regarding Mr. Williams's location when Officer Norsworthy ordered him to leave, the court must accept Mr. Williams's version of events. And in Mr. Williams's version of events, no reasonable officer could have believed that Mr. Williams had refused to comply with a lawful order. *See Pickens*, 59 F.3d at 1206.

As Mr. Williams argues (doc. 27 at 26) the presence of these disputed facts makes the analysis "straightforward": under binding precedent that was clearly established at the time of Mr. Williams's arrest, "an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures," *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297 (11th Cir. 2018) (quotation marks omitted), *abrogated in part on unrelated grounds as recognized in Harris v. Hixon*, 102 F.4th 1120, 1128–29 (11th Cir. 2024). Accordingly, the court **WILL DENY** Corporal Norsworthy's motion for summary judgment as to Count One. (Doc. 25).

### III.   CONCLUSION

The court **WILL FIND AS MOOT** Defendants' first motion for summary judgment. (Doc. 24). The court **WILL GRANT IN PART** and **WILL DENY IN**

9

**PART** Defendant's corrected motion. (Doc. 25). This case will proceed to trial on Count One, in which Mr. Williams asserts a claim of false arrest against Corporal Norsworthy.

The court will enter a separate partial summary judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this July 31, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE